# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SEAN P. MCNAMEE,
    Plaintiff,

v.

THE UNITED STATES,
    Defendant.

No. 3:17-cv-295 (VAB)

## RULING ON DEFENDANT'S MOTION TO DISMISS

Sean McNamee ("Mr. McNamee" or "Plaintiff"), a certified public accountant, has sued the United States Department of Treasury Internal Revenue Service ("United States"), claiming an unconstitutional denial of his right to appeal a proposed penalty assessed against him. Compl. at 2, ECF No. 1. Mr. McNamee does not seek damages—only "his constitutional right to an appellant hearing." Am. Compl. at 1, ECF No. 11.

The United States moves to dismiss the Complaint because the United States did not waive its sovereign immunity in 28 U.S.C. § 6320 or § 6330, and argues that the Court therefore lacks jurisdiction over this case. Mot. Dismiss at 1, ECF No. 8. The Court agrees.

This Court does not have jurisdiction over this matter. 28 U.S.C. § 6330(d)(1) grants jurisdiction to the Tax Court, and there is no explicit waiver under any of the provisions that Mr. McNamee cited for the government to be sued in the District Court. As a result, for the reasons discussed more fully below, Defendant's motion to dismiss is **GRANTED** and this case is dismissed.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Mr. McNamee, a certified public accountant, has helped clients prepare their tax forms for many years. *See, e.g.*, Compl. at 1, 13. This lawsuit involves tax preparer penalties issued against Mr. McNamee, and his attempts to appeal those penalties within the Internal Revenue Service ("IRS").

Issues arose from tax filings that Mr. McNamee helped his clients prepare from 2007 until at least 2013. In a letter to the Internal Revenue Service (IRS), Mr. McNamee explains that, in late 2012, two representatives from the IRS and an individual from the U.S. Attorney's Office interviewed him, while assessing penalties based on sixteen audits of his clients. Opp. Mot. Dismiss Ex. 9 at 1, ECF No. 12-9.

Evidently, the IRS's investigation focused on whether Mr. McNamee had understated the salaries and overstated the expenses of several clients. *See* Compl. at 7. For example, Mr. McNamee apparently advised at least one client that the client could qualify as a "traveling or city salesman" under I.R.C. § 3121(d)(3)(D). *Id*. As a "traveling salesman" or independent contractor, Mr. McNamee advised, the client could claim certain business expenses as exempt from income tax. *Id.* The client reported his wage income on Form 1040 as $178,000 for 2009 and $165,000 for 2010. *Id.* at 19. The client reported "no gross receipts for both years" but listed "expenses of $9,600 and $10,310 for 2009 and 2010, respectively." *Id.*

The IRS determined, however, that the client was not an independent contractor but rather a wage earner and "one of the owners of the corporation in which he received wages." Compl. at 19. The IRS explained that Mr. McNamee had "treated the taxpayer as a statutory employee and created false expenses." *Id.* The IRS stated that Mr. McNamee had estimated his client's expenses based on Mr. McNamee's theory that "a real estate developer has to incur

expenses, like travel and meals and entertainment to conduct his business," and therefore "anyone who works on a commission based earning[] should be entitled to match the expenses they incur to carry [out] their employment responsibilities, dollar for dollar, and not subject to limitations . . . ." *Id*. But, the IRS noted, Mr. McNamee had failed to include "supporting documentation . . . to substantiate the expenses on [the client's] schedule C." *Id.* The IRS found that Mr. McNamee knew that the expenses listed in the client's schedule C had not been reimbursed by the corporation, and explained that "actual unreimbursed expenses do not belong on schedule C." *Id.* at 20. The IRS concluded that Mr. McNamee "willfully disregarded rules and regulations in preparation of the return." *Id.* at 24.

On March 5, 2013, Mr. McNamee "received approximately 30 penalty notices" of proposed penalties against him for tax years 2007 through 2010, all contained a claim that Mr. McNamee had violated I.R.C. § 6694(b)(1). Opp. to Mot. Dismiss Ex. 9 at 1; Compl. at 11; Am. Compl. at 2. That statute provides:

> Any tax return preparer who prepares any return or claim for refund with respect to which any part of an understatement of liability is due to a conduct described in paragraph 2 [i.e., willful or reckless conduct] shall pay a penalty with respect to each such return or claim in an amount equal to the greater of—(A) $5,000, or (B) 75 percent of the income derived (or to be derived) by the tax return preparer with respect to the return or claim.

I.R.C. § 6694(b)(1). The notice also allegedly stated that Mr. McNamee had thirty days to appeal the proposed penalties, and explained that if Mr. McNamee disagreed with the findings, he could request a meeting or a telephone call with a representative from the IRS, and if he disagreed again, he could request a conference with the Appeals Office within the IRS. Compl. at 11. The IRS enclosed a document titled "Your Appeal Rights and How to Prepare a Protest If You Don't Agree," and explained the procedures to protest the assessment. *Id.* Finally, the letter stated that

3

if Mr. McNamee did not respond by April 4, 2013, the IRS would "assess the penalty and begin enforced collection actions." *Id.*

On March 19, 2013, Mr. McNamee received statutory notices that penalties had been assessed against him. Compl. at 2.

On May 31, 2013, the IRS informed Mr. McNamee that a complaint had been filed against him alleging "a lack of due diligence" and "disreputable conduct" as a result of treating commission-based taxpayers "as statutory employees as opposed to common law employees." *Id.* at 25. Mr. McNamee responded on June 4, 2013, and the IRS replied that he "thoroughly researched and documented the basis for the position [he] took," but "failed to advise [his] clients of the potential penalties that were reasonably likely to apply to the client." *Id.*

Mr. McNamee's case was also sent to the Office of Professional Responsibility (OPR) in the Department of Treasury. *See* Compl. at 25. On March 5, 2014, OPR sent Mr. McNamee a reprimand letter based on "information that called into question [his] fitness to practice before the Internal Revenue Service . . . ." *Id.* The letter concluded that Mr. McNamee had erroneously treated taxpayers as statutory employees, rather than common law employees, despite audits that should have corrected the error. *Id.* OPR found that Mr. McNamee had "thoroughly researched and documented the basis for the position [he] took" but "failed to advise [his] clients of the potential penalties that were reasonably likely to apply to the client." *Id.* OPR concluded that Mr. McNamee's conduct fell "below that of the standards of a competent practitioner" but declined to "initiate a proceeding for [Mr. McNamee's] censure, suspension, or disbarment from practice before the Internal Revenue Service at this time" and instead reprimanded Mr. McNamee for the conduct. *Id.*

Mr. McNamee alleges that he and his original counsel wrote protest letters, and attaches one to the Complaint that explains that Mr. McNamee "conducted substantial research into the legislative history and interpretation of" the applicable tax provisions, and "acted out of a good faith belief" that his reading of the tax code was correct. Compl. at 7. Mr. McNamee claims that, as of the filing of the Amended Complaint in July 2017, despite his repeated requests for one, no appellate hearing had taken place. Ex. 2-1 to 2-6. Mr. McNamee did attach to his Complaint a letter from an Appeals Officer at the IRS, who indicated that he received Mr. McNamee's file, including his objections to the proposed assessment of his penalties, on August 1, 2016, and Mr. McNamee could expect a review of the matter in about six months of that date. *Id.* at 27-28. In addition, the United States indicated in its motion to dismiss that, at some point, the tax return preparer penalties proposed or assessed against Mr. McNamee for 2012 and 2013 were reversed by the IRS Office of Appeals. Mot. Dismiss at 5; Mot. Dismiss Ex. A, ECF No. 8-2.

In the initial Complaint, Mr. McNamee sought to remove any and all liens against him until those liens are appealed or cancelled. Compl. at 3. He asked the Court to "direct the Internal Revenue Service [to] immediately restore [his] PTIN and . . . immediately process and approve an electronical filing code number so that [his] clients may properly file the taxes they are required to file by law." *Id.* In addition, he asked the Court to "immediately suspend any and all audits or appeals being conducted in the State of Connecticut and moved to an independent jurisdiction so that [his] clients may get fair representation in an audit" and "direct the Internal Revenue Service to cease their continued harassment of [Mr. McNamee and his] clients." *Id.* In the Amended Complaint, he reduces his "original claim to the sole position of the Treasury denying [him] his constitutional right to an appellant hearing." Am. Compl. at 1. He does not seek damages. Am. Compl. at 3.

In the first Complaint, ECF No. 1, Mr. McNamee named the "Department of the Treasury Internal Revenue Service Appeals Office CT-RI Appeals Office 333 East River Drive, Suite 200, East Hartford CT 06108" as the defendant. The Amended Complaint, ECF No. 11, replaces that defendant with the "United States."

## II.  STANDARD OF REVIEW

The United States moves to dismiss Mr. McNamee's Amended Complaint based on a lack of subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction over the claims. *Id.*

In evaluating whether the plaintiff has established that the Court has subject matter jurisdiction, "the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009). The Court views the facts alleged in the Complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))). Furthermore, a complaint "filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1995)).

### III. DISCUSSION

Mr. McNamee claims that this Court has jurisdiction over this case under Internal Revenue Code §§ 6320 and 6330, as well as under 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and 28 U.S.C. § 1331. Am. Compl. The United States, on the other hand, argues that Mr. McNamee's Complaint must be dismissed for lack of subject matter jurisdiction because the United States has not waived sovereign immunity. Mot. Dismiss 3. The Court agrees.

#### A. Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity is jurisdictional, and a federal agency may only be sued to the extent that it consents to be sued. *Id.*; *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (citations omitted)). Statutory waivers of sovereign immunity must be expressed unequivocally. *Binder & Binder, P.C. v. Colvin*, 818 F.3d 66, 70 (2d Cir. 2016); *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990))). The plaintiff "bears the burden of establishing that [the] claims fall within an applicable waiver" of sovereign immunity. *Makarova*, 201 F.3d at 113.

### 1. Jurisdiction under the Internal Revenue Code Sections 6320 and 6330

Mr. McNamee seeks to bring claims against the United States under Sections 6320 and 6330 of the Internal Revenue Code. He has failed to establish, however, that the United States has waived its sovereign immunity and permitted itself to be sued under either section. *See Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) ("[W]aivers of sovereign immunity must be 'unequivocally expressed' in statutory text, and cannot simply be implied." (quoting *Nordic Village, Inc.*, 503 U.S. at 33)). Nothing in the text of either statute provides such a waiver. In fact, the text suggests that rather than confer jurisdiction to this Court, authority to adjudicate the matters under these federal laws instead reside with the Tax Court.

Section 6320, "Notice and opportunity for hearing upon filing of notice of lien," provides that a person against whom a penalty will be assessed must be provided notice "not more than 5 business days after the day of the filing of the notice of lien." I.R.C. § 6320(a)(1)-(2). It also requires that the following information be included in the notice:

> (A) the amount of unpaid tax;
> (B) the right of the person to request a hearing during the 30-day period beginning on the day after the 5-day period described in paragraph (2);
> (C) the administrative appeals available to the taxpayer with respect to such lien and the procedures relating to such appeals;
> (D) the provisions of this title and procedures relating to the release of liens on property; and
> (E) the provisions of section 7345 relating to the certification of seriously delinquent tax debts and the denial, revocation, or limitation of passports of individuals with such debts pursuant to section 32101 of the FAST Act.

*Id.* § 6320(a)(3). The statute also provides a right to a fair hearing:

> (b) Right to fair hearing.—
> (1) In general.—If the person requests a hearing in writing under subsection (a)(3)(B) and states the grounds for the requested hearing, such hearing shall be held by the Internal Revenue Service Office of Appeals.

> (2) One hearing per period.—A person shall be entitled to only one hearing under this section with respect to the taxable period to which the unpaid tax specified in subsection (a)(3)(A) relates.
> (3) Impartial officer.—The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6330. A taxpayer may waive the requirement of this paragraph.
> (4) Coordination with section 6330.—To the extent practicable, a hearing under this section shall be held in conjunction with a hearing under section 6330.

*Id.* § 6320(b).

Under Section 6330, before the IRS makes a levy on any property or right to property of a person, the IRS must send a notice, in writing and thirty days before the day of the first levy, that the person is entitled to a hearing. 28 U.S.C. § 6330. The right to a fair hearing under that section, similar to the section under Section 6320, states:

> (1) In general.—If the person requests a hearing in writing under subsection (a)(3)(B) and states the grounds for the requested hearing, such hearing shall be held by the Internal Revenue Service Office of Appeals.
> (2) One hearing per period.—A person shall be entitled to only one hearing under this section with respect to the taxable period to which the unpaid tax specified in subsection (a)(3)(A) relates.
> (3) Impartial officer.—The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320. A taxpayer may waive the requirement of this paragraph.

*Id.* § 6330(b).

For proceedings after a hearing, an individual "may, within 30 days of a determination under [Section 6330], petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter)." *Id.* § 6330(d)(1).[1] The IRS Office of

---

[1] At oral argument, the United States explained that an avenue for relief had previously been available to Mr. McNamee under I.R.C. § 6694(c). Under that statute,

9

Appeals also "retain[s] jurisdiction with respect to any determination made under this section, including subsequent hearings requested by the person who requested the original hearing on issues regarding—(A) collection actions . . . and (B) after the person has exhausted all administrative remedies, a change in circumstances with respect to such person which affects such determination." *Id.* § 6330(d)(3).

Neither Section 6320 nor Section 6330 waives sovereign immunity. *Compare* The Social Security Act, 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days

---

> (1) In general.—If, within 30 days after the day on which notice and demand of any penalty under subsection (a) or (b) is made against any person who is a tax return preparer, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). . . .
>
> (2) Preparer must bring suit in district court to determine his liability for penalty.—If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under subsection (a) or (b) is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the tax return preparer fails to begin a proceeding the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

I.R.C. § 6694(c). The United States explains, however, that although this alternative appeal route may have been available at one point to Mr. McNamee, he did not make the fifteen percent payment and claim a refund; therefore he cannot invoke the jurisdictional waiver available in section (2) to a preparer who paid the fifteen percent required by section (1). *See* Def.'s Reply in Support of Mot. Dismiss at 4, ECF No. 20.

. . . in the district court of the United States for the judicial district in which the plaintiff resides. . . ."); *with F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("By permitting [Federal Savings and Loan Insurance Corporation (FSLIC)] to sue and be sued, Congress effected a 'broad' waiver of FSLIC's immunity from suit." (citations omitted)). Because those statutes do not waive the government's sovereign immunity, this Court has no authority, based on those statutes, to decide the claims that Mr. McNamee brings against the IRS. *See Loeffler v. Frank*, 486 U.S. 549, 554 (1988) ("Absent a waiver of sovereign immunity, the Federal Government is immune from suit."); *Federal Housing Admin., Region No. 4 v. Burr*, 309 U.S. 242, 244 (1940) (comparing *Buchannan v. Alexander*, 45 U.S. 20, 21 (1846), a ruling "derived from the principle that the United States cannot be sued without its consent," with a situation where Congress permitted the Federal Housing Administrator "to sue and be sued in any court of competent jurisdiction, State or Federal" (quoting 12 U.S.C.A. § 1702), and finding jurisdiction only in the latter).

### 2. Federal Question Jurisdiction Under 28 U.S.C. § 1331

Section 1331 grants this Court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Mr. McNamee argues that this Court has jurisdiction under Section 1331. Compl. at 1. The United States responds that "Section 1331 only confers jurisdiction over a claim against the United States where some other statute provides a waiver of sovereign immunity." Mot. Dismiss at 4 (citing *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006)). The Court agrees.

Section 1331 confers federal question jurisdiction to the District Court. "Federal question jurisdiction exists where a well-pleaded complaint 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a *substantial question of federal law.*'" *Perpetual Securities, Inc. v. Tang*, 290 F.3d 132, 137 (2d

Cir. 2002) (quoting *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000) (additional citations omitted)). To decide whether a complaint raises a federal question under Section 1331, the Court "examine[s] 'the nature of the federal question raised in [each] claim to see if it is sufficiently substantial to warrant federal jurisdiction.'" *Id.* (quoting *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 570 (2d Cir. 1995)).

Section 1331, however, "is not a general waiver of immunity." *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 724 (2d Cir. 1983); *accord Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972) ("Sections 1331 and 1343, Title 28, United States Code, may not be construed to constitute waivers of the federal government's defense of sovereign immunity."); *Can v. United States*, 820 F. Supp. 106, 110 (S.D.N.Y. 1993) ("[S]ection 1331 does not effect a general waiver of the sovereign immunity of the United States."). Because the United States has not explicitly and unequivocally consented to be sued in this Court, this Court does not have jurisdiction over the Section 1331 claim Mr. McNamee seeks to bring here.

### 3. Jurisdiction Under Section 1983

Mr. McNamee also argues that this Court has jurisdiction under 42 U.S.C. § 1983. Compl. at 1. The United States argues that Section 1983 does not confer jurisdiction on this Court because Section 1983 "only provides relief when state actors violate federal law or the Constitution; it does not apply to the actions of the federal government or its agencies." Mot. Dismiss at 3 (citing *United States v. Acosta*, 502 F.3d 54, 60 (2d Cir. 2007)). The Court agrees.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. In other words, Section 1983 provides an avenue for citizens to bring suits against state actors who violate federal laws. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989) ("Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." (quoting 42 U.S.C. § 1983)). "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983). Second, the plaintiff must show that "[t]he conduct at issue '[was] committed by a person acting under color of state law.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

Section 1983, because it applies to state actors, not federal ones, is of no assistance to Mr. McNamee. *Acosta*, 502 F.3d at 60 ("Section 1983, of course, does not apply to allegedly unlawful acts of federal officers."). Mr. McNamee alleges claims against the United States, and specifically the Department of Treasury, not claims against a state actor violating federal law; Section 1983 therefore does not provide him a cause of action.

### 4. Jurisdiction Under *Bivens v. Six Unknown Named Agents of Federal. Bureau of Narcotics*, 403 U.S. 388 (1971)

Finally, Mr. McNamee argues that *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* confers jurisdiction to this Court to hear his lawsuit. Compl. at 1. The United States responds that "[a] *Bivens* action cannot be brought against the United States or a federal agency." Mot. Dismiss at 4 (citing *Meyer*, 510 U.S. at 473, 484-86). The Court agrees.

In *Bivens*, the Supreme Court held that a plaintiff may recover money damages for injuries sustained as a result of a federal agent's violation of the Constitution, against that federal agent in his individual capacity. 403 U.S. at 397. *Bivens* is available only against federal officers

13

in their individual capacities, however, not against the United States or its agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994) (declining to "expand the category of defendants against whom *Bivens*-type actions may be brought to include not only federal *agents*, but federal *agencies* as well"); *see also Schweiker v. Chilicky*, 487 U.S. 412, 428-29 (1988) (holding that *Bivens* relief was not an appropriate remedy for plaintiffs who brought due process claims to challenge the termination of their social security benefits); *Hudson Valley Black Press v. I.R.S.*, 409 F.3d 106, 113 (2d Cir. 2005) ("[E]very circuit that has considered the appropriateness of a *Bivens* remedy in the taxation context has uniformly declined to permit one.").

Mr. McNamee brings a due process claim against the IRS *vis-à-vis* the United States; he has not alleged that a federal agent in his individual capacity has violated Mr. McNamee's constitutional rights. Therefore, his *Bivens* claim must be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is dismissed.

The Clerk of the Court is directed to enter a judgment and close this case.

SO ORDERED at Bridgeport, Connecticut, this 28th day of December, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE